IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETHREN MUTUAL INSURANCE COMPANY, | : | CIVIL ACTION NO. **3:CV-04-1509** |
| | : | |
| | : | (Judge Munley) |
| | : | |
| | : | (Magistrate Judge Blewitt) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN THOMAS and BONNIE THOMAS, | : | |
| | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On July 12, 2004, Plaintiff, Brethren Mutual Insurance Company ("Brethren"), instituted the instant Declaratory Judgment action requesting the court to declare that Defendants, John and Bonnie Thomas, breached their duties and obligations under an insurance policy it issued to Defendants due to their failure to appear for supplemental examinations under oath regarding Defendants' first party fire insurance claim for their home and its contents. (Doc. 1). Specifically, this case arises out of Plaintiff's claim that Defendants refused to appear for supplemental examinations under oath with respect to their insurance claim for fire loss of their home and all of its contents on January 14, 2004, and that due to Defendants' failure to comply with the terms and conditions of the insurance policy, Plaintiff has been precluded from fully investigating and evaluating Defendants' fire loss claim. Plaintiff contends that due to Defendants' breach of the insurance contract, it is not obligated to provide any coverage for the Defendants' claim.

As relief, Plaintiff requests the Court to declare that it has no obligation to provide coverage under its policy, and no obligation to pay Defendants with respect to their fire loss claims. (Doc. 1, p. 7).

Defendants filed an Answer to the Complaint on September 15, 2004, and also filed two Counterclaims against Plaintiff. (Doc. 3). Defendants have attached as an exhibit to their pleading a correct copy of their homeowners policy (#HPP0033916) issued by Plaintiff to Defendants. Doc. 3, Ex. A.[1]  As noted, at oral argument, Plaintiff stipulated that Defendants' exhibit was the correct copy of the homeowners policy at issue in this case. Defendants have raised two Counterclaims against Plaintiff.  The first is for breach of the homeowners policy which Plaintiff issued to Defendants.  Defendants allege that Plaintiff failed to pay their first party fire loss claim, and thus breached the insurance policy by failing to pay.  In their second count of their Counterclaim against Plaintiff, Defendants raise a bad faith claim against Plaintiff under 42 Pa. C.S.A. § 8371, alleging that

---

[1] A copy of the homeowners insurance policy Plaintiff purportedly issued to Defendants is attached to Plaintiff's Complaint as Exhibit A, Doc. 1.  However, at the April 25, 2006 oral argument held in this case regarding Defendants' Summary Judgment Motion, the parties agreed that the insurance policy attached to Plaintiff's Complaint as Ex. A was not, in fact, Defendants' homeowners policy.  Rather, the parties agree that on February 21, 2003, Plaintiff issued Defendants an insurance policy covering their home for a one-year period and that the policy number was HPP0033916.  Doc. 1, ¶ 5. & Doc. 3, ¶ 5.  Further, Plaintiff stipulated at the oral argument that Defendants have attached a copy of the correct homeowners policy as an exhibit to their Answer to the Complaint and Counterclaims, Doc. 3, Ex. A.  Thus, we find that the Duties After Loss specified in Ex. A to Doc. 3 contains the language from the correct homeowners policy Plaintiff issued to Defendants.  We also note that when comparing the Duties After Loss language specified in Plaintiff's Brief (Doc. 34, pp. 1-3) with the Duties After Loss provision contained in the correct homeowners policy attached to Defendants' Answer to Plaintiff's Complaint (Doc. 3, Ex. A, pp. 9-10,  Section I- Conditions ¶ 2.), they are not the same.

Plaintiff acted in bad faith in handling their claim.  (Doc. 3, pp. 3, *et seq*.).

It is not disputed that Plaintiff has refused to provide coverage under the policy it issued to Defendants.  Plaintiff claims that Defendants have breached the policy by their wilful failure to appear for supplemental examinations under oath as required by the policy.  Thus, Plaintiff contends that it was prevented from fully evaluating Defendants' claim.  Plaintiff asserts that the policy was rendered void by Defendants' failure to comply with the policy by not appearing for the supplemental examinations under oath as required by the policy.

Defendants claim (Doc. 30, p. 7) that they have fully complied with the policy's requirements, including their appearance at an examination under oath on February 16, 2004 (Doc. 29, Ex. C),  by providing a complete estimate of the cost to rebuild their home along with blueprints, by providing a complete list of all items lost in the fire, and by giving subsequent interviews.  Defendants state that there is no dispute that they have fully cooperated with Plaintiff's investigation of their fire loss claim.  Defendants contend that they did not appear at the requested supplemental examinations under oath because the request was not reasonable in light of the fact that they provided Plaintiff with all information they had regarding their claim, and since it was undisputed that Plaintiff's own adjuster (Kopper) and investigator (Harding) did not even review their first examinations under oath before Plaintiff requested their attendance at the second examinations.  Defendants also contend that Plaintiff only requested the supplemental examinations under oath after they exercised their right under the insurance policy to demand an appraisal to determine the amount of their loss, which demand Plaintiff initially honored by selecting its appraiser, but then reneged and demanded mediation of Defendants' claim.  Defendants state that

only after they demanded an appraisal pursuant to the policy and after they refused Plaintiff's request for mediation, did Plaintiff seek their supplemental examinations under oath. Defendants state that Plaintiff never justified to them the specific reason why their supplemental examinations were needed or what additional information Plaintiff was seeking.

## II.  Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true

only after they demanded an appraisal pursuant to the policy and after they refused Plaintiff's request for mediation, did Plaintiff seek their supplemental examinations under oath. Defendants state that Plaintiff never justified to them the specific reason why their supplemental examinations were needed or what additional information Plaintiff was seeking.

## II.  Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true

and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

**III. Discussion.**

Presently pending before the Court is the Motion for Summary Judgment of Defendants. **(Doc. 28)**. Defendants' Motion has been briefed. (Docs. 29, 30 34). Exhibits have been submitted by the parties. (Docs. 29 & 35). In their Summary Judgment Motion, Defendants seek judgment with respect to Plaintiff's declaratory judgment action, and request that coverage under their homeowners policy with Plaintiff be provided them for the total loss of their home and for all of its contents as a result of the February 14, 2004 fire.

Plaintiff undisputedly failed to timely file a response to Defendants' Statement of Material Facts ("SMF") (Doc. 29) as required by Local Rule 56.1, M.D. Pa. At oral argument, Defendants moved for Plaintiff to be deemed as admitting each of their SMF's as prescribed under the stated Local Rule. Plaintiff's counsel conceded that most of Defendants' SMF's were undisputed, but requested the Court to afford Plaintiff additional time to file a *nunc pro tunc* response to Defendants' SMF. The Court directed Plaintiff to file a motion with respect to its request to respond to Defendants' SMF (Doc. 29) *nunc pro tunc*. Plaintiff filed its Motion *Nunc Pro Tunc* to Answer Defendants' SMF on May 22, 2006. (Doc. 45). We have granted Plaintiff's Motion since the Court has not yet ruled on Defendants' Summary Judgment Motion and we found no prejudice to Defendants. (*See* Doc. 46). Indeed, as counsel for Plaintiff represented at oral argument, Plaintiff has admitted most of Defendants' SMF's.

Pursuant to the request of Defendants, as mentioned, on April 25, 2006, the Court held oral argument on Defendants' Summary Judgment Motion.

This action is filed under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, in order to decide a question in actual controversy between the parties. The Declaratory Judgment Act provides this Court with the discretionary authority to grant declaratory relief. *See State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a Maryland company and Defendants are Pennsylvania residents. (Doc. 1, ¶'s 2.-4.).[2]

The parties have not consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636 (c)(1), and we have been assigned this case for pre-trial matters under § 636(b)(1)(A).

On January 16, 2006, Defendants, the insureds, filed a Motion for Summary Judgment and SMF with respect to Plaintiff's claim that they failed to fully cooperate in the investigation of their claim, voiding their homeowners' insurance policy with Plaintiff, *i.e.*, Plaintiff's breach of insurance contract claim against Defendants.[3] (Docs. 28 & 29). Defendants filed their support Brief on January 30, 2006. (Doc. 30). Plaintiff, after being granted an extension of time, filed its opposition Brief on March 9, 2006. (Doc. 34). Both parties also filed exhibits. (Docs. 29 & 35). As stated, Plaintiff failed to timely respond to Defendants' SMF, but we have allowed Plaintiff's *nunc pro tunc*

---

[2] A jury demand was made by the Plaintiff.

[3] Defendants' Summary Judgment Motion does not address Defendants' Counterclaims against Plaintiff.

6

response.  The Motion is ripe for disposition.[4]

In making an insurance policy coverage determination, the court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted).  Further, under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted).[5]

> [I]n Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer.  *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d 145, 152 n. 3 (3d Cir. 1998) (*citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)). Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." *Selko*, 139 F.3d at 152 n. 3 (internal

---

[4] As stated, while Defendants properly filed a SMF (Doc. 29) pursuant to Local Rule 56.1, M.D. Pa., Plaintiff failed to timely respond to it paragraph by paragraph as required.  In its Response to Defendants' Summary Judgment Motion (Doc. 33), Plaintiff indicated that it would respond to Defendants' SMF.  However, we did not find any response to Defendants' SMF as required by Local Rule 56.1 to have been timely filed by Plaintiff.  At oral argument, Plaintiff's counsel recognized his failure to file a response to Defendants' SMF and moved the Court for permission to file a response *nunc pro tunc*.  Defendants' counsel strenuously objected to this request, and we directed Plaintiff's counsel to file a motion with respect to his untimely request. On May 22, 2006, we entered an Order granting Plaintiff's *nunc pro tunc* Motion for Leave to File an Answer to Defendants' SMF (Doc. 46), and directed that Plaintiff's Answer to Defendants' SMF be filed of record. (Doc. 47).  Notwithstanding Plaintiff's admission to most of Defendants' SMF's, we still find genuine issues of material fact in this case precluding the granting of Defendants' Summary Judgment Motion.

[5] Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Thus, we shall apply Pennsylvania law with respect to the insurance coverage issue.

> citations and quotation marks omitted).  In construing policy language, courts should consider any special usage "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense [.]" *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193 (Pa. 2001)."

*USX Corp. v. Liberty Mut. Ins. Co.*, ___, F.3d ___, 2006 WL 903192 * 4 (3d Cir. 2006).

### A. Policy Language

The Brethren Mutual homeowner insurance policy which the Defendants possessed, policy number HPP0033916, provided as follows:

> **2. Your Duties After Loss.**  In case of a loss to covered property, you must see that the following are done:
>
> a. Give prompt notice to us or our agent;
> b. Notify the police in case of loss by theft;
> c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;
> d. Protect the property from further damage.  If repairs to the property are required, you must:
>
>    (1) Make reasonable and necessary repairs to protect the property; and
>    (2) Keep an accurate record of repair expenses;
>
> e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory;
> f. ***As often as we reasonably require***:
>
>    (1) Show the damaged property;
>    (2) Provide us with records and documents we request and permit us to make copies; and

        (3)    ***Submit to examination under oath***, while not in the presence of any other "insured," and sign the same;

  g.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    (1)    The time and cause of loss;
    (2)    The interest of the "insured" and all others in the property involved and all liens on the property;
    (3)    Other insurance which may cover the loss;
    (4)    Changes in title or occupancy of the property during the term of the policy;
    (5)    Specifications of damaged building and detailed repair estimates;
    (6)    The inventory of damaged personal property described in **2.e.** above;
    (7)    Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    (8)    Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

(Doc. 3, Exhibit A, pp. 9-10, Section I - Conditions) (Emphasis added).

It is undisputed that Defendants' insurance policy with Plaintiff was in effect at the time of their fire loss, that their house and all personal property therein were completely destroyed by the January 14, 2004 fire, and that the policy covered replacement costs coverage for Defendants' dwelling as well as its contents. (Doc. 29, ¶ 1. and Doc. 47, ¶ 1.).  Further, the stated duties of Defendants after loss, as provided by the policy, undisputedly required Defendants to submit to an examination under oath "as often as we [Brethren] reasonably require," and to provide Plaintiff with requested records and documents.  What is, however, disputed in this case is whether Plaintiff was

reasonable in requiring Defendants to attend the supplemental examinations under oath, and whether Defendants' failure to submit to the requested supplemental examinations under oath demonstrated a clear and unambiguous material breach of their insurance policy with Plaintiff. We find that it is a jury question if Plaintiff had all of the information and documentation that Defendants could possibly provide regarding the value of their loss, as Defendants claim Plaintiff did, or if Plaintiff reasonably believed that the supplemental examinations under oath were required to question Defendants to substantiate their valuation of their loss. We do not find, based on the record and the evidence, that we can determine as a matter of law that Defendants fully cooperated in Plaintiff's investigation of their loss. We further find that factual questions exist as to whether a substantial breach of the policy occurred, and whether Plaintiff was prejudiced.

### B. Brethren's Obligation to Provide Coverage for Defendants' Fire Loss

The rules of contract interpretation must be applied in analyzing an insurance policy. As the Court stated in *State Farm v. Dunleavy*, 197 F. Supp. 2d 183, 186-87 (E.D. Pa. 2001), the following rules govern the interpretation of a policy:

> The interpretation of an insurance policy is governed by the following rules of contract interpretation: 1) terms must be given their ordinary meaning; 2) ambiguous terms should be construed against the insurer; 3) "a term is ambiguous only if 'reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning;'" "and 4) the parties' "true intent must be determined not only from the language but from all the surrounding circumstances." *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)); *See also Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 585, 326 A.2d 346 (1974) (citing *Burne v. Franklin Life Insur. Co.*, 451 Pa. 218, 226, 301 A.2d 799 (1973)) ("Furthermore, where the contact is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.")

As stated, in this case, there is no dispute between the parties that Defendants' loss caused by the fire was covered under their policy with Plaintiff. Rather, the dispute is over the replacement value of Defendants' house and the contents therein. We find that it is a disputed fact as to whether Plaintiff could obtain, by conducting supplemental examinations under oath, further reasonable information from Defendants as to the valuation of their real and personal property losses. We also find a disputed fact exists as to whether Plaintiff was caused prejudice as a result of Defendants' failure to attend said examinations.

We accept Defendants' SMF's Paragraphs 1., 3. - 16.; Paragraphs 18. - 19., Doc. 29. Plaintiff, for the most part, has admitted these. (Doc. 47). We incorporate the stated paragraphs herein by reference, and we shall not repeat them herein. However, we find the Defendants' cited case of *Ania v. Allstate Ins. Co.*, 161 F.Supp.2d 424 (E.D. Pa. 2001), as supportive of Plaintiff's position in opposition to Defendants' Summary Judgment Motion, and not *vice versa*.

The parties agree that if the Defendants did not fully cooperate with Plaintiff's investigation of their claim, then Plaintiff has no duty to provide coverage.

As Defendants correctly argued before this Court, Plaintiff must show Defendants failed to cooperate with Plaintiff's investigation, and that their breach was substantial and caused Plaintiff prejudice. Defendants contend that there was no point of the supplemental examination under oath because Plaintiff could not gather any further useful information, since they already provided Plaintiff with all the information they had regarding their claim, and since there was no more information that Defendants had that was not previously given to Plaintiff. (Doc. 29, Ex. C). Thus, according to Defendants, they gave Plaintiff everything they had regarding their claim, and the

11

supplemental examinations under oath demanded by Plaintiff was not reasonable.

Defendants reiterated that there is not a question as to coverage and that Plaintiff does not contest coverage. Rather, the only issue is valuation of Defendants' loss of property. Defendants claim they gave Plaintiff all of the information they possessed regarding valuation of loss. When the parties could not agree on valuation of Defendants' loss, Defendants elected to go to appraisal to determine their loss, which was their right under the insurance contract to do.[6] Defendants state that they chose an appraiser, and then Plaintiff chose an appraiser. However, according to Defendants, Plaintiff then contested their appraisal and would not agree to the appraisal procedure.

In May 2004, Defendants state that Plaintiff rejected appraisal, and requested to go to mediation to resolve the value of Defendants' property loss. Defendants rejected mediation, and wanted to proceed on their election, under the policy, of an appraisal to determine their property loss. According to Defendants, only after Defendants rejected mediation, did Plaintiff indicate that it wanted to conduct their supplemental examinations under oath. In a letter, Defendants' attorney asked Plaintiff's counsel why Defendants' supplemental examinations under oath were needed, and what other information was needed in an attempt to determine whether Plaintiff's request was reasonable. Defendants claim Plaintiff failed to ever specify exactly what further information was required from Defendants regarding their claim. Defendants state that Plaintiff only gave them a generic response. Thus, Defendants rely upon *Ania*, *supra*, to support their position. (Doc. 30, pp. 6-7).

---

[6]The policy clearly provided a party could elect appraisal if a property value dispute arose. *See* Doc. 3, Ex. A, p. 11, Sections I - Conditions, ¶ 6. Appraisal.

Defendants point to the undisputed fact that Plaintiff's Investigator Harding and Claims Adjuster Kopper (Doc. 29, ¶ 19. and Doc. 47, ¶ 19.) testified that they never even read Defendants' first examinations under oath, and that Plaintiff never considered Defendants' first examinations. Therefore, Defendants argue that Plaintiff could not possibly be prejudiced by their refusal to attend supplemental examinations because Plaintiff never even read their first examinations.

It is undisputed that, after Defendants refused to appear for the supplemental examinations under oath, Plaintiff sued Defendants for Declaratory Judgment, seeking to void the insurance contract, asserting Defendants' failure to fully cooperate in the fire loss investigation as the basis. Defendants point to the fact that they were deposed in the Declaratory Judgment action, and Plaintiff did not ask them one question about their loss of property. Defendants conclude that Plaintiff must show a substantial breach of the insurance contract and that it was prejudiced. Defendants maintain that the undisputed facts show no breach of the insurance contract due to their full cooperation.

The Plaintiff argues that the insurance policy required the Insureds (Defendants) to appear for an examination under oath as reasonable and as many as required. The above referenced policy language reveals that this fact is not disputed. Plaintiff states that Defendants provided a contents inventory at their first examinations under oath (Doc. 29, Ex. C), and that Defendants were questioned about the contents of the inventory. Subsequently, Plaintiff's Investigator Harding conducted an investigation of Defendants' contents of inventory (Doc. 35, Ex. C). Harding found that questions arose regarding Defendants' claim of their contents. (*Id.*). Plaintiff found no corroboration as to the purchase by Defendants of all items contained on their inventory. Harding

also found discrepancies between what was in the building estimates submitted by Defendants and what he believed the property was worth at the time of the fire. (*Id*.).  Those discrepancies were not discussed with Defendants at their first examinations under oath.  Therefore, Plaintiff requested Defendants to attend supplemental examinations under oath to question them regarding the contents inventory and the building estimates they submitted, as well as about corroboration of the items on their list.  Plaintiff wanted to question Defendants about the veracity of their claim.  On May 7, 2004, Plaintiff's attorney sent Defendants' attorney a letter regarding the supplemental examinations, and a second letter in June of 2004, and questioned Defendants' contents claim, the living expenses of Defendants, and the building cost of their new house. (Doc. 35, Exs. E and F). The May 2004 letter also indicates that Plaintiff agreed to appraisal of the Defendants' building claim, but that questions arose regarding Defendants' contents claim. (*Id*.).  Plaintiff's June 2004 letter indicated that the stated claim issues had to be resolved before Plaintiff would proceed to an appraisal.

      Both parties agree that the *Ania* case, cited by Defendants, holds that it is Plaintiff's burden of proof to show a substantial breach of the insurance contract and prejudice suffered by the insurance company.  The parties dispute if a substantial breach occurred by Defendants' failure to attend the supplemental examinations, and if Plaintiff suffered prejudice by their failure to attend. As discussed, we find these questions to raise genuine issues of material fact for a jury to determine. We also find that *Ania* supports Plaintiff's position in our case.

      Plaintiff states that it was prejudiced because it could not further examine Defendants under oath regarding questions that arose about their building claim and contents claim after their first

14

examinations under oath, and because it could not determine if it had a fraud defense to Defendants' claim.[7]  Plaintiff claims that Defendants failed to cooperate by not going to the supplemental examinations under oath, and by preventing Plaintiff's investigation as to whether there was a fraud element to Defendants' claims.  We agree with Plaintiff that there are fact questions as to whether Defendants failed to cooperate in the claims investigation, and as to whether Plaintiff was prejudiced in this case by the undisputed conduct of Defendants.

The question presented before the Court is whether there are genuine issues of material fact as to if Defendants fully cooperated with Plaintiff's investigation of their fire loss claim as required by their insurance policy, and, if so, whether Defendants' failure to cooperate constituted a substantial breach of the policy.  If Defendants did not fully cooperate, then the issue becomes whether Plaintiff has been caused prejudice by Defendants' refusal to appear at the supplemental examinations under oath.  Based on the filings of the parties and on the oral arguments made to this Court, we find factual disputes as to whether Defendants fully cooperated in the investigation of their fire loss claim, as to whether Defendants' failure to submit to the supplemental examinations under oath was a clear and unambiguous breach of their insurance policy, and as to whether Defendants' failure to appear caused Plaintiff prejudice.  Thus, we find genuine issues of material fact as to whether Defendants' failure to attend their supplemental examinations under oath was a failure to fully comply with the policy's requirement that they cooperate in the investigation of their fire loss claim, and whether Defendants' failure to attend was a substantial

---

[7]The insurance policy provided that the policy would be void if the insureds committed fraud regarding a claim submitted thereunder.  Doc. 3, Ex. A, p. 17.

breach of the policy which caused Plaintiff to suffer prejudice.  In light of these disputed factual issues, we shall recommend that Defendants' Summary Judgment Motion be denied.

Even if we accept most of Defendants' SMF as true,[8] except for Paragraphs such as ¶ 17., Doc. 29, which we find to be a factual dispute for the jury to determine, and ¶ 23. which is a legal conclusion, we still find the existence of the above-stated genuine issues of material fact in this case. We find, as stated in ¶ 18. of Defendants' SMF (Doc. 29) and as stated at oral argument, it is undisputed that Plaintiff's policy issued to Defendants covered their fire loss, both their dwelling and the contents in their dwelling. Plaintiff concedes that it has provided coverage for Defendants' dwelling, living expenses, and for contents. (Doc. 47, ¶ 18.).  Indeed, the policy at issue reveals that such damage to real and personal property as unquestionably occurred in this case, were covered by the policy.  *See* Doc. 3, Ex. A, Section I - Property Coverage, A and C.   Rather, as indicated at oral argument, the questions raised by Plaintiff concern Defendants' cooperation, considering they refused to appear for supplemental examinations under oath, as well as the valuation of Defendants' property loss, *i.e.* real and personal property.  Thus, the parties agree that the dispute in this case is not over coverage of Defendants for the fire loss at their home; rather, it centers around the replacement value of Defendants' house as well as the contents therein.

If the finder of fact decides that Defendants' willful failure to attend the supplemental examinations under oath was a breach of Defendants' duty to cooperate with the insurance investigation of their fire loss claim, and if the factfinder concludes that the breach was substantial

---

[8]Counsel for Plaintiff represented to the Court at oral argument that Plaintiff would be admitting most of Defendants' SMF's.  Indeed, Plaintiff's *nunc pro tunc* Answer to Defendants' SMF admits, for the most part, the facts as Defendants assert. (Doc. 47).

and caused Plaintiff to suffer prejudice, then Plaintiff may be relieved from providing Defendants with coverage.  We find that these issues of fact are indeed disputed and are material to this case. As such, these issues of fact must be decided by the jury and not by this Court.  As discussed, we find that the case cited by Defendants (Doc. 30, p. 6), *Ania v. Allstate*, 161 F.Supp.2d 424 (2001), supports Plaintiff's position in this case insofar as we find a disputed factual issue as to whether Plaintiff indicated what additional information it sought, and whether Plaintiff was prejudiced by Defendants' failure to appear at the supplemental examinations under oath.  (Doc. 35, Exs. C, E and F).  Simply put, as discussed, the evidence is not clear if the Plaintiff was able to properly value Defendants' real and personal property losses in this case (*i.e.* the building claim and contents claim) due to to Defendants' failure to attend the supplemental examinations under oath.

Accordingly, since we find the record replete with material factual disputes, we shall recommend that Defendants' Motion for Summary Judgment **(Doc. 28)** be denied.

**IV. Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment **(Doc. 28)** be denied.[9]

                                    **s/ Thomas M. Blewitt**_____
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**

**Dated: May 30, 2006**

---

[9]Since discovery has been completed and the dispositive motions deadline has passed, we do not recommend the remand of this case to the undersigned.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETHREN MUTUAL INSURANCE COMPANY, | : | CIVIL ACTION NO. **3:CV-04-1509** |
| | : | |
| | : | (Judge Munley) |
| | : | |
| | : | (Magistrate Judge Blewitt) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN THOMAS and BONNIE THOMAS, | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 30, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: May 30, 2006**